******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## ELIZABETH BURKE *v.* GREGORY MESNIAEFF
### (AC 38350)

Lavine, Keller and Bishop, Js.

*Syllabus*

The plaintiff brought this action for assault and battery against the defendant to recover damages for personal injuries she sustained during an incident involving the defendant. At the time of the incident, the parties, who were married, were residing in New York and had been experiencing marital problems. The defendant previously had purchased a house in Sharon and recorded the deed in his name only. The incident at issue occurred at the Sharon house, when a tour involving guests was being conducted at the house. The plaintiff learned of the tour and drove to Sharon to surprise and confront the defendant. When she entered the house she was enraged and screaming, and the tour guests were fearful of her conduct and concerned for their safety. The defendant told the plaintiff to leave, grabbed her upper arm, and escorted her from the house and down the driveway, but the plaintiff resisted the defendant's escort and attempted to strike him and to break loose from his hold to return to the house. The plaintiff thereafter commenced this action, and the defendant filed an answer and a number of special defenses, including justification, wrongful conduct and defense of others. The plaintiff did not file a request to revise or a motion to strike any of the amended special defenses. After a trial, the jury returned a verdict in favor of the defendant, finding that his conduct toward the plaintiff constituted intentional assault and battery and was a substantial factor in causing her injuries, but that the plaintiff's recovery was barred by the special defenses of justification and defense of others. The court rendered judgment in accordance with the verdict, and the plaintiff appealed to this court. *Held*:

1. The plaintiff could not prevail on her claim that the trial court improperly charged the jury with respect to the defendant's special defense of justification by incorporating a charge on criminal trespass:

   a. The plaintiff could not prevail on her claim that the charge was improper because, as a matter of law, she could not have been trespassing on the subject premises, which she claimed was marital property; the jury did not find that the plaintiff had trespassed on the premises, and even if this court were to assume that the jury had been misled by the criminal trespass charge, the plaintiff was not harmed by it because the jury found that her recovery was not barred by the doctrine of wrongful conduct, which necessarily relates to trespassing.

   b. The plaintiff's claim that the charge of criminal trespass was improper because she did not have notice of the statute on which the defendant had grounded his justification special defense was unavailing; despite the defendant's failure to identify the pertinent statute (§ 53a-20) specifically by number as required by the rules of practice (§ 10-3 [a]), the plaintiff had sufficient notice of the defendant's criminal trespass special defense, as trespass had been alleged several times in the defendant's special defenses and her counsel had made a strategic decision not to file a request to revise or a motion to strike any of the defendant's special defenses, and the plaintiff failed to demonstrate that the jury had been misled or that she was harmed by the court's use of the term trespass in its charge, as the jury, in finding that the plaintiff's claims were not barred by the defendant's wrongful conduct special defense, necessarily found that the plaintiff had not committed criminal trespass.

   c. The trial court properly did not charge the jury with regard to whether the defendant had a duty to retreat during the subject incident, as the duty to retreat exception pertains to the use of deadly physical force, which was not an issue in the present case.

2. There was sufficient evidence in the record on which the jury reasonably could have relied in determining that the defendant was acting in defense of others during the subject incident; the record revealed that the plaintiff unexpectedly entered the Sharon house and began shouting in a loud and aggressive manner, causing the tour guests to be concerned for

their safety, that, in response, the defendant took the plaintiff by the arm and escorted her from the house, and that the plaintiff resisted the defendant's escort and attempted to strike him and to break loose from his hold to return to the house, and, therefore, under those circumstances, the jury reasonably could have found that the defendant's response was reasonable and that he had used reasonable physical force in the defense of others when he escorted the plaintiff from the house.

(*One judge dissenting*)

Argued February 15—officially released November 7, 2017

*Procedural History*

Action to recover damages for, inter alia, assault and battery, and for other relief, brought to the Superior Court in the judicial district of Litchfield and transferred to the judicial district of Stamford-Norwalk, where the matter was tried to the jury before *Lee, J.*; verdict and judgment for the defendant, from which the plaintiff appealed to this court. *Affirmed*.

*Campbell D. Barrett*, with whom were Johanna Katz and, on the brief, *Anne C. Dranginis*, *Jon T. Kukucka*, *Gabrielle Levin* and *Naomi Takagi*, pro hac vice, for the appellant (plaintiff).

*Charles S. Harris*, with whom was *Stephanie C. Laska*, for the appellee (defendant).

*Opinion*

LAVINE, J. In this personal injury action, the plaintiff, Elizabeth Burke, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendant, her former husband Gregory Mesniaeff. On appeal, the plaintiff claims that (1) the court improperly charged the jury on the defendant's special defense of justification and (2) the special defense of defense of others was legally and factually barred. We affirm the judgment of the trial court.

The following relevant evidence was presented to the jury. The plaintiff and the defendant married one another in 1989. On December 5, 2009, the date of the incident that is the subject of the present appeal (incident), the parties resided together in their home in New Rochelle, New York. The defendant, however, purchased a house in Sharon in 1998 and recorded the deed in his name alone. According to the defendant, the plaintiff never lived in the Sharon house, except for two weeks in August, 2002. The plaintiff, however, testified that the parties spent extensive amounts of time at the Sharon house. She testified that she had painted the interior of the house in a color scheme that she had selected, had a key to the house, and kept clothing and other personal belongings there.

The defendant was a member of a historic preservation organization called The Questers. The Questers facilitated a tour of the Sharon house that the defendant arranged to take place between 2:30 and 4 p.m. on December 5, 2009. The defendant intentionally did not tell the plaintiff about the tour, did not invite her to attend, and did not want her to attend because she was not a member of The Questers. He also was "afraid that there could be some problems if she was there."[1] The plaintiff, however, learned of the tour the morning of December 5, 2009, when she went online to find out when the Sharon Christmas tree lighting ceremony was to take place. While she was online, she saw The Questers' posting regarding the tour of the Sharon house. The plaintiff was concerned about the cleanliness of the Sharon house because the defendant set cleaning limits. She telephoned the defendant at his Manhattan office, but was unable to reach him. According to the plaintiff, the parties had plans to attend a Christmas party in Manhattan that evening, but the defendant denied having such plans.

Although it snowed on December 5, 2009, the plaintiff drove to Sharon because the defendant had been "lying to [her] about everything and [she] knew that when [she] met him in Manhattan later that night, he would deny that such a tour took place. And [she] couldn't take the lying anymore and he would deny it and [she] was hoping to talk to him and figure out why he was lying to [her] about everything." On her way to Sharon,

the plaintiff called some of her friends to advise them that she was going to surprise and confront the defendant about his alleged lying. She also stopped at Powers' greenhouse and told Laurel Powers and Eddie Powers that the defendant "had been physically violent with [her] before and there was a possibility that that could happen again so [she] wanted them to make sure that they heard from [her] and to check on [her]." As a safety precaution, the plaintiff planned to arrive at the end of the tour when people were still in the house.

The plaintiff arrived at the Sharon house at approximately 4:15 p.m. Three women, Anne Teasdale, Suzanne Chase Osborne, and Lauren Silberman, were taking part in the tour when she arrived. The plaintiff did not park her car in the driveway, but near the guest cottage and walked down the driveway to the Sharon house. She entered the house by the back entry. Teasdale testified that, when the plaintiff walked into the house, she was yelling. According to one of the guests, the plaintiff was out of control when she entered the house, shrieking and yelling, "who is that woman and what is she doing in my house." One guest "didn't know if our lives were in danger [or if the plaintiff] had a gun and she was going to go after [the defendant]."

The defendant testified that when the plaintiff entered the house, she was enraged, repeatedly screaming in a shrill voice: "Who is that woman? Why is she in my house?" The defendant confronted the plaintiff and stated, "you are leaving now." The plaintiff admitted that the defendant asked her to leave. The defendant took the plaintiff by the upper right arm and walked her down the driveway. Out a window, one of the guests saw the defendant holding the plaintiff by the arm. While they were walking down the driveway, the plaintiff attempted to break from the defendant's grasp and return to the house. The plaintiff was screaming, and one of the guests "was really worried about our safety, my safety, everyone's safety."

According to the defendant, while he and the plaintiff were walking down the driveway, the plaintiff resisted and attempted to strike him in the face. He admitted that he restrained the plaintiff from returning to the Sharon house where the guests remained. He also admitted that he caused bruises to the plaintiff's upper arm, but he denied that he caused other injuries to the plaintiff.

The plaintiff's version of the incident differs from that of the defendant. She denied that she tried to strike the defendant. According to her, the defendant grabbed her by the arm, pulled her away from the Sharon house, put her in a headlock, and dragged her down the driveway and up the sidewalk toward the Sharon Center School. While he was dragging her, the defendant forcefully threw the plaintiff to the ground several times and pulled her up by her arm. The plaintiff screamed: "Help,

help! Call the police!" The defendant denied throwing the plaintiff to the ground but testified that the plaintiff slipped once or twice on the snow and that he helped her up.

At the time, Pierce Kearney and his wife were driving by on their way to the Christmas tree lighting ceremony on the Sharon green. Kearney saw the plaintiff being pushed into the snow. He slowed down, opened the window, and heard the plaintiff calling for someone to call the police. Kearney thought that the defendant was handling the plaintiff in an aggressive fashion. He got out of his vehicle and approached the parties, who then separated. The defendant stated to him, "It's okay, she's my wife." Kearney got between the parties and stated, "No, this is over." Kearney's wife called the police. The defendant left the sidewalk, returned to the Sharon house, and departed with the tour guests.

The plaintiff commenced the present action on December 6, 2011.[2] Trial commenced on August 4, 2015. Following the presentation of evidence, the court held a charge conference on the record, at which time the court heard considerable argument from the parties' counsel with respect to its proposed instructions. The parties, however, agreed on the interrogatories that were submitted to the jury.[3] The jury returned a defendant's verdict on August 18, 2015. Although the jury found that the defendant's conduct toward the plaintiff on December 5, 2009, constituted intentional assault and battery and was a substantial factor in causing the plaintiff's injuries, it also found that the plaintiff's recovery was barred by the special defenses of justification and defense of others. See footnotes 3 and 6 of this opinion. The court rendered judgment in favor of the defendant, and the plaintiff appealed.[4]

The plaintiff's claims on appeal center on the court's jury charge. We therefore set forth the applicable standard of review. "Our standard of review concerning claims of instructional error is well settled. [J]ury instuctions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . The instruction must be adapted to the issues and may not mislead the jury but should reasonably guide it in reaching a verdict. . . . We must review the charge as a whole to determine whether it was correct in law and sufficiently guided the jury on the issues presented at trial. . . .

"Our standard of review on this claim is whether it was reasonably probable that the jury was misled. . . . The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to

the jury in such a way that injustice is not done to either party under the established rules of law. . . . Therefore, jury instructions need not be exhaustive, perfect, or technically accurate. Nonetheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.) *Opotzner* v. *Bass*, 63 Conn. App. 555, 558–59, 777 A.2d 718, cert. denied, 257 Conn. 910, 782 A.2d 134 (2001), cert. denied, 259 Conn. 930, 793 A.2d 1086 (2002).

To determine whether the court properly charged the jury, we look to the law regarding a court's instructions. "Jury instructions should be confined to matters in issue by virtue of the pleadings and evidence in the case." (Internal quotation marks omitted.) *Cooks* v. *O'Brien Properties, Inc.*, 48 Conn. App. 339, 350, 710 A.2d 788 (1998). "[P]leadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them. . . . The purpose of a complaint, special defense or counterclaims is to limit the issues at trial, and such pleadings are calculated to prevent surprise." (Citation omitted; internal quotation marks omitted.) *Shapero* v. *Mercede*, 77 Conn. App. 497, 503, 823 A.2d 1263 (2003). We therefore briefly review the allegations of the parties' pleadings as they form the framework of the court's jury charge.

The plaintiff amended her complaint several times. Although she filed the operative complaint at the close of evidence to conform her alleged injuries to the evidence, the relevant allegations are consistent with her March 20, 2015 amended complaint. It alleges six counts against the defendant: intentional assault and battery, reckless assault and battery, negligent assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and reckless infliction of emotional distress. The plaintiff also alleged that, as a direct and proximate result of the defendant's assault and battery, she sustained numerous injuries, including injuries to her left arm, neck, lower back, hip, and leg, and experienced depression, anxiety, and an aggravation of her lupus condition.[5] The allegations that are relevant to the plaintiff's instructional claim are that the defendant was the owner of the Sharon house and that she was married to him on the date of the incident.

On May 1, 2015, the defendant filed an amended answer and special defenses in response to the plaintiff's amended complaint dated March 20, 2015. He admitted that he was the owner of the Sharon house and that he was married to the plaintiff on the date of the incident. He denied the allegations as to his conduct

and that he caused the plaintiff's alleged injuries. He also alleged thirteen special defenses, some of which were equitable in nature. The plaintiff moved to strike the equitable special defenses, and on May 28, 2015, the defendant filed nine amended special defenses. In four of his special defenses, the defendant alleged that at the time of the incident the plaintiff was *trespassing*.[6] The plaintiff did not file a request to revise or a motion to strike the trespassing allegations, but merely filed a single general denial of all of the special defenses.

## I

The plaintiff claims that the court improperly charged the jury with respect to the defendant's special defense of justification by incorporating a charge on criminal trespass.[7] More specifically, the plaintiff claims that (1) as a matter of law, she could not have been trespassing on marital property, (2) the defendant failed to plead that his special defenses relied on a criminal statute, and (3) it was plain error for the court not to include an instruction on the duty to retreat and the mere words doctrine. We conclude that the jury was not misled by the court's instruction, and, therefore, the plaintiff's claim fails.

The plaintiff takes issue with the following portion of the court's charge. "The defendant has also raised the defense of 'wrongful conduct,' claiming that the plaintiff is barred, in whole or in part, from pursuing her claims under the doctrine of wrongful conduct.

"The defendant alleges that on December 5, 2009, the plaintiff was trespassing on the premises and exhibiting disorderly conduct and/or creating a disturbance. The parties agree that the defendant did not invite the plaintiff to the historic tour. In addition, the defendant alleges the plaintiff entered and/or remained on the property after she was directed to leave by him, the owner of the property, and that she refused to do so, among other claims asserted with respect to trespassing. The plaintiff does not dispute that she was told to leave. The defendant also alleges that the plaintiff was exhibiting disorderly conduct and/or creating a public disturbance. The defendant also alleges that the plaintiff was assaulting and/or battering him during the incident of December 5, 2009.

"Under Connecticut law, a plaintiff may not maintain a civil action for injuries allegedly sustained as the direct result of her knowing and intentional participation in a criminal act. The wrongful conduct defense does not apply if you find that the plaintiff sustained injuries and damages independent of any wrongful conduct of the plaintiff. It further applies only if the plaintiff has violated the law in connection with the very transaction as to which she seeks redress or relief."

## A

The plaintiff claims that the court improperly gave a

criminal trespass charge because, as a matter of law, she could not trespass at the Sharon house because it was marital property.[8] The gist of the plaintiff's claim is that because on the date of the incident she was married to the defendant, who owned the Sharon house, she had a right to be on the premises and, therefore, could not trespass. We need not determine whether the plaintiff had a right to be on the premises because the jury did not find that she was trespassing. The portion of the charge to which the plaintiff takes exception pertains to the defendant's fourth special defense: wrongful conduct. See footnotes 6 and 7 of this opinion. The jury found that the plaintiff's recovery was not barred by the doctrine of wrongful conduct. See footnote 3 of this opinion. In common parlance, trespassing is understood to be a form of wrongful conduct. We therefore construe the jury's findings to indicate it decided that the plaintiff was not trespassing. Even if we were to assume, which we do not, that the jury was misled by the inclusion of the criminal trespass charge in the court's instruction, the plaintiff was not harmed because the jury found that her recovery was not barred by the doctrine of wrongful conduct.

B

The plaintiff claims that it was improper for the court to include the charge of criminal trespass in its instruction because she did not have notice of the statute on which the defendant was relying. We agree with the plaintiff that our rules of practice provide that when a special defense is "grounded on a statute, the statute shall be specifically identified by its number." Practice Book § 10-3 (a). The plaintiff, however, has not demonstrated that she was harmed by the court's instruction that used the term criminal trespass. As discussed, the jury did not find that her claims were barred by the defendant's wrongful conduct special defense.

As previously noted, there was considerable disagreement between the parties with respect to the court's proposed jury instruction. During the charge conference, counsel for the plaintiff informed the court that the defendant's justification special defense was grounded in the defense of premises statute, which includes criminal trespass.[9] The plaintiff's counsel, therefore, objected to the court's proposed trespass charge on the ground that a spouse cannot trespass on marital property and that the defendant had failed to allege the statute number in his special defense as required by the rules of practice.

The following colloquy then took place between the court and counsel for the plaintiff:

"The Court: [Y]ou know . . . I wish there had been a motion to strike. I mean . . . look at some of these things and I'm saying that's . . . but you know . . . we're late in the day. . . . [W]e've had a trial. We've

had pleadings now that have survived all that.

"[The Plaintiff's Counsel]: And it was late, and I didn't want . . . I was going to have to go and . . . and wait another six months to a year to get a new trial date if I pursued the motion to strike. That was . . . and so a decision was made and . . . my decision was made but that it's now up to . . . the court to charge the things out. Okay. So, I had . . . to go, and I had to make a tactical decision of delaying this trial for an extended period of time to be able to go and . . . have motions for summary judgment, motions [to] strike, and things like that, or to go to trial and have the trial judge at this moment in time have to make the tough calls on the fly as opposed to . . . in your chambers with . . . the leisure of four months to be able to go and do it."[10]

Counsel for the defendant argued that it was disingenuous of the plaintiff's counsel to make an issue of the statute number when the plaintiff failed to file a request to revise or a motion to strike. The defendant's counsel stated: "I think they have a duty to raise it, Your Honor . . . previously . . . if they're going to raise it today. They amended their complaint yesterday mid-trial, and now they're saying, well, we couldn't put in the statute that for months now we've been saying the same thing. And with respect to marital property, I think that is incorrect. This isn't marital property. The property was bought in his name, titled in his name."

The court was not persuaded by the arguments of the plaintiff's counsel, noting that although it was the defendant's duty to plead the statute number, both parties had offered evidence on the issue of trespass. The court ruled that it was not going to exclude the trespass charge, as trespass was alleged several times in the defendant's special defenses, which was sufficient to put the plaintiff on notice. Despite its concern that the parties had not adhered to the rules of practice,[11] the court observed that the rules of practice are not to be applied so strictly as to work an injustice.[12] The court, therefore, charged the jury on the defendant's special defenses, including criminal trespass.[13]

"Although Practice Book § 10-3 (a) provides that when any claim in a complaint is grounded on a statute, the statute shall be specifically identified by its number, this rule has been construed as directory rather than mandatory. . . . [When] the [opposing party] is sufficiently apprised of the nature of the action . . . the failure to comply with the directive of Practice Book § 10-3 (a) will not bar recovery." (Internal quotation marks omitted.) *Colon* v. *Board of Education*, 60 Conn. App. 178, 188 n.4, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000); see also *Spears* v. *Garcia*, 66 Conn. App. 669, 676, 785 A.2d 1181 (2001), aff'd, 263 Conn. 22, 818 A.2d 37 (2003).

Although this is a civil action, the first count of the plaintiff's complaint alleges a criminal act, to wit: "the [d]efendant wilfully, intentionally and maliciously assaulted and battered the [p]laintiff." In response, the defendant alleged trespass in a number of his special defenses and, in his ninth special defense, that the plaintiff exhibited disorderly conduct and/or was creating a public disturbance. See footnote 6 of this opinion. Notably, the plaintiff was on notice of the defendant's defense, and her counsel made a tactical decision not to file a request to revise or a motion to strike any of the defendant's special defenses.

We conclude that the jury was not misled by the use of the word *trespass* in the court's charge. Although the court mentioned the commission of a criminal trespass, which it then defined, as an example of a justification defense permitting the use of reasonable physical force, the court went on to instruct the jury that the three justification defenses that the defendant alleged were self-defense, defense of others, and wrongful conduct as to the incident on December 5, 2009. See footnote 7 of this opinion. The fact that the court only charged on these three special defenses is further supported by the jury interrogatories, as the jury was not asked to determine whether the plaintiff's recovery was barred by the special defense of justification based on the defense of one's premises.

With respect to the court's instruction on the special defenses of defense of others and self-defense, the court properly did not advise the jury that the defendant had to prove that the plaintiff was trespassing as an element of either of these special defenses. In fact, the court never mentioned the word trespassing in its instructions on these two special defenses.

As to the special defense of wrongful conduct, the court clearly instructed the jury that it would have to find that, during the incident on December 5, 2009, the plaintiff knowingly and intentionally participated in one of four criminal acts by criminally trespassing, exhibiting disorderly conduct, creating a public disturbance, or assaulting the defendant.

The jury answered interrogatories indicating that it had found that the plaintiff's claims were not barred by the special defenses of self-defense and wrongful conduct, but were barred by the special defense of defense of others. Because the court charged that the special defense of wrongful conduct required proof that the plaintiff had knowingly and intentionally participated in a criminal act by either criminally trespassing, exhibiting disorderly conduct, creating a public disturbance or assaulting the defendant, the jury, in finding that the defendant had failed to prove this special defense, concluded that the plaintiff had not violated the law, which necessarily included finding that she

had not committed criminal trespass. Therefore, the plaintiff cannot prevail on this claim of an improper jury instruction.

## C

The plaintiff claims that the court improperly charged the jury by failing to instruct that the defendant had a duty to retreat in the Sharon house because she was a codweller. See *State* v. *Shaw*, 185 Conn. 372, 382, 441 A.2d 561 (1981), cert. denied, 45 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982). The plaintiff's claim is predicated on her belief that she dwelled in the Sharon house. We need not determine, however, whether she dwelled in the Sharon house. The plaintiff did not preserve this claim at trial and seeks reversal of the judgment pursuant to the plain error doctrine. The plaintiff cannot prevail because the duty to retreat exception on which she relies pertains to the use of deadly force, which is not an issue in this case.

General Statutes § 53a-19 provides in relevant part that "(a) . . . a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose . . . (b) . . . a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he or she is in his dwelling . . . ." "The dwelling exception to the duty to retreat does not apply, however, if the actor is threatened by another person who also dwells in the same place." (Internal quotation marks omitted.) *State* v. *James*, 54 Conn. App. 26, 33, 734 A.2d 1012, cert. denied, 251 Conn. 903, 738 A.2d 1092 (1999). The court, therefore, properly did not charge the jury that the defendant had a duty to retreat.[14]

## II

The plaintiff's last claim is that the defense of others special defense was legally and factually barred because there was insufficient evidence that the defendant was acting in defense of others when he assaulted her. When reviewing sufficiency of the evidence claims we must determine "*in the light most favorable to sustaining the verdict*, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . ." (Emphasis in original; internal quotation marks omitted.) *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 534, 733 A.2d 197 (1999).

The defense of defense of others is codified in General Statutes § 53a-19 (a). "The defense of others, like self-defense, is a justification defense. These defenses operate to exempt from punishment otherwise criminal

conduct when the harm from such conduct is deemed to be outweighed by the need to avoid an even greater harm or to further a greater societal interest." (Internal quotation marks omitted.) *State* v. *Bryan*, 307 Conn. 823, 832–33, 60 A.3d 246 (2013). "[T]he defendant bears the initial burden of producing sufficient evidence to raise the issue[s] of self-defense [and defense of others], this burden is slight." *State* v. *Terwilliger*, 105 Conn. App. 219, 224 n.5, 937 A.2d 735 (2008), aff'd, 294 Conn. 399, 984 A.2d 721 (2009).

"[I]t is not the function of this court to sit as a seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . In making this determination, [t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. . . . In other words, [i]f the jury *could* reasonably have reached its conclusion, the verdict must stand . . . ." (Emphasis added; internal quotation marks omitted.) *Mann* v. *Regan*, 108 Conn. App. 566, 579, 948 A.2d 1075 (2008).

On the basis of our review of the evidence, we conclude that there was sufficient evidence upon which the jury reasonably could have reached its verdict that the defendant was acting in defense of others when he escorted the plaintiff from the Sharon house. Prior to arriving at the Sharon house, the plaintiff told some of her friends that she was going to the Sharon house during a house tour to surprise and confront the defendant about his "lying." When she arrived at the Sharon house, she did not park in the driveway but at the guest cottage. She entered the house from the rear and began to scream, "who is that woman and what is she doing in my house." The plaintiff was enraged and tour guests were fearful of her behavior. At least one guest was worried that the plaintiff may have had a gun.[15] The defendant told the plaintiff to leave and escorted her from the house. The plaintiff resisted the defendant's escort and attempted to strike him and to break loose from his hold to return to the house. Under those circumstances, the jury reasonably could have found that the defendant's response was reasonable in the face of the plaintiff's unexpectedly entering the house and shouting in a loud and aggressive manner.[16] Moreover, the jury reasonably could have found that the defendant took the plaintiff by the arm to escort her from the house and used reasonable physical force in the defense of others. On the basis of our review of the record, notwithstanding the fact that the charge to the jury was less than perfect, we conclude that the jury's verdict is supported by the evidence and by its common sense evaluation of what happened during the incident. The plaintiff's claim of insufficient evidence therefore fails.[17]

The judgment is affirmed.

In this opinion KELLER, J., concurred.

[1] The parties had been experiencing marital difficulties for approximately one year prior to the incident. In the week before to the incident, the plaintiff consulted a divorce attorney. Subsequent to the incident, the defendant commenced an action for the dissolution of the parties' marriage; the parties were divorced at the time of trial in the present matter.

[2] The plaintiff placed the writ of summons and complaint in the hands of a marshal on December 2, 2011, pursuant to General Statutes § 52-593a.

[3] The court submitted the following interrogatories to the jury. The jury's responses to the interrogatories are key to our resolution of the plaintiff's claim that the court's instruction misled the jury. The plaintiff's verdict form included, in part, the following questions; the jury's answers are in brackets.

"1. Assault and Battery (Answer All)

"a. We find that the conduct of [the defendant] on December 5, 2009 constituted intentional assault and battery.

"Yes __[X]___                          No _____

"b. We find that the conduct of [the defendant] on December 5, 2009 constituted reckless assault and battery.

"Yes _____                          No __[X]___

"c. We find the conduct of [the defendant] on December 5, 2009 constituted negligent assault and battery.

"Yes _____                          No __[X]___

"2. Infliction of Emotional Distress (Answer All)

"a. We find that the conduct of [the defendant] on December 5, 2009 constituted intentional infliction of emotional distress.

"Yes _____                          No __[X]___

"b. We find that the conduct of [the defendant] on December 5, 2009 constituted negligent infliction of emotional distress.

"Yes _____                          No __[X]___

"3. Proximate Cause

"We find that the conduct of [the defendant] on December 5, 2009 was a substantial factor in causing or aggravating the injuries and damages of [the plaintiff].

"Yes __[X]___                          No _____

"(If you answered no, you must render a Defendant's Verdict, using the Defendant's verdict form.)

"4. Defendant's Defenses (Answer all)

"a. We find Plaintiff's recovery is barred by the doctrine of justification

"Yes __[X]___                          No _____

"b. We find Plaintiff's recovery is barred by the doctrine of self-defense

"Yes _____                          No __[X]___

"c. We find Plaintiff's recovery is barred by the doctrine of defense of others

"Yes __[X]___                          No _____

"d. We find Plaintiff's recovery is barred by the doctrine of wrongful conduct

"Yes _____                          No __[X]___ . . . ."

[4] The plaintiff did not file a motion to set aside the verdict.

[5] The plaintiff presented evidence that she incurred damages of $267,512.95 for medical care and treatment.

[6] The defendant's relevant special defenses alleged in part:

"Fourth Special Defense: Wrongful Conduct

"The plaintiff is barred, in whole or in part, from pursuing her claims under the doctrine of wrongful conduct. On December 5, 2009, the plaintiff was *trespassing* on the premises. The plaintiff exhibited disorderly conduct and/or was creating a public disturbance. In addition, the plaintiff was assaulting and/or battering the defendant. . . .

"Seventh Special Defense: Self Defense

"With respect to the allegations of December 5, 2009, any actions taken by the defendant were in self-defense. The plaintiff was *trespassing* at the time of the incident and was assaulting and/or battering the defendant.

"Eighth Special Defense: Defense of others

"With respect to the allegations of December 5, 2009, any actions taken by the defendant were in defense of others. The plaintiff was *trespassing* at the time of the incident and was acting in a disorderly manner.

"Ninth Special Defense: Justification

"At the time of the incident, the plaintiff was *trespassing* on the defendant's property. The plaintiff, knowing that she was not licensed or privileged

to do so, entered and remained on the property. Despite the defendant, who is the owner of the property, directing her to leave, the plaintiff refused to do so. The plaintiff then continued to exhibit disorderly conduct and/or create a public disturbance. As such, the defendant was justified in using reasonable force in escorting the plaintiff from the premises." (Emphasis added.)

[7] The following portion of the court's charge is at the center of the plaintiff's claims on appeal: "Justification is a general defense to the use of physical force. The use of physical force upon another person that results in actual injury, while usually a criminal assault, is not criminal if it is permitted or justified by a provision of law or statute.

"Therefore, when one is accused of committing an assault claims that he or she acted under a legal justification, the jury must examine the circumstances and discover whether the act was truly justified. The court's function in instructing the jury is to tell the jury the circumstances which the use of physical force against another person is legally justified.

"Justification defenses focus on the defendant's reasonable beliefs as to circumstances and the necessity of using force. The jury must view the situation from the perspective of the defendant. However, the defendant's belief ultimately must be found to be reasonable. *For example, a person in possession or control of premises is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises. A person commits criminal trespass when, knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises, after an order to leave, or after an order not to enter, that was personally communicated to such person by the owner of the premises.*

"The claim focuses on what the defendant reasonably believes under the circumstances and presents a question of fact. The jury's initial determination requires the jury to assess the veracity of witnesses, often including the defendant, and to determine whether the defendant's account of his belief at the time of the confrontation is in fact credible. The jury must make a further determination as to whether that belief was reasonable, from the perspective of a reasonable person in the defendant's circumstances.

"The defendant's conduct must be judged ultimately against that of a reasonably prudent person. It is not required that the jury find that the victim, was in fact, using or about to use physical force against the defendant. . . .

"The defendant raised the issues of self-defense and defense of others as to the incident on December 5, 2009. After you have considered all of the evidence in this case, if you find that the plaintiff has proved her claims you must go on to consider whether or not the defendant acted in self-defense of himself or of others.

"A person is justified in the use of force against another person that would otherwise be illegal if he is acting in the defense of himself or others under certain circumstances. The statue defining self-defense reads in pertinent part as follows:

" '[A] person is justified in using reasonable physical force upon another person to defend himself from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose.'

"The statute requires that, before a defendant uses physical force upon another person to defend himself, he must have two 'reasonable beliefs.' The first is a reasonable belief that physical force is then being used or about to be used upon him. The second is a reasonable belief that the degree of force he is using to defend himself from what he believes to be an ongoing or imminent use of force is necessary for that purpose.

"A defendant is not justified in using any degree of physical force in self-defense against another if he provokes the other person to use physical force against him. Also, a defendant is not justified in using any degree of physical force in self-defense against another if he is the initial aggressor. A defendant cannot use excessive force in his self-defense or defense of others. . . .

"The defendant has also raised the defense of 'wrongful conduct,' claiming that the plaintiff is barred, in whole or in part, from pursuing her claims under the doctrine of wrongful conduct.

"The defendant alleges that on December 5, 2009, the plaintiff was trespassing on the premises and exhibiting disorderly conduct and/or creating a disturbance. The parties agree that the defendant did not invite the plaintiff

to the historic tour. In addition, the defendant alleges the plaintiff entered and/or remained on the property after she was directed to leave by him, the owner of the property, and that she refused to do so, among other claims asserted with respect to trespassing. The plaintiff does not dispute that she was told to leave. The defendant also alleges that the plaintiff was exhibiting disorderly conduct and/or creating a public disturbance. The defendant also alleges that the plaintiff was assaulting and/or battering him during the incident of December 5, 2009.

"Under Connecticut law, a plaintiff may not maintain a civil action for injuries allegedly sustained as the direct result of her knowing and intentional participation in a criminal act. The wrongful conduct defense does not apply if you find that the plaintiff sustained injuries and damages independent of any wrongful conduct of the plaintiff. It further applies only if the plaintiff has violated the law in connection with the very transaction as to which she seeks redress or relief." (Emphasis added.)

[8] "Marital property" is a term of art reserved for the distribution of assets in an action for marital dissolution. General Statutes § 46b-81 provides in relevant part that the court may assign to either party "all or any part of the estate of the other spouse" in a marital dissolution proceeding. See also General Statutes §§ 46b-36 and 46b-37; *Porter* v. *Thrane*, 98 Conn. App. 336, 342 n.6, 908 A.2d 1137 (2006) (neither husband nor wife acquires by virtue of marriage interest in real property of other during other's lifetime). We need not determine whether the Sharon house was marital property.

[9] Defense counsel cited General Statutes § 53a-20, which provides in relevant part: "A person in possession or control of premises . . . is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent . . . the commission or attempted commission of a criminal trespass by such other person in or upon such premises . . . ."

[10] The record discloses that the defendant first pleaded trespass in his answer and special defenses dated March 27, 2015. Trespass appears in four of his special defenses. The plaintiff filed a general denial of the special defenses on July 15, 2015, without having moved to strike any of the special defenses.

[11] It is not the role of the trial court to frame the issues for trial but to admit legally and logically relevant evidence in accordance with the pleadings; see, e.g., *State* v. *Hunter*, 62 Conn. App. 767, 775, 772 A.2d 709 (2001); and to assist the jury in applying the law correctly to the facts they might find established. *State* v. *Blango*, 102 Conn. App. 532, 543, 925 A.2d 1186, cert. denied, 284 Conn. 913, 931 A.2d 932 (2007). The issues raised in this appeal are largely of the parties' own making in that they failed to comply with our rules of practice. See *Suntech of Connecticut, Inc.* v. *Lawrence Brunoli, Inc.*, 173 Conn. App. 321, 333–34 n.15, 164 A.3d 36 (2017).

[12] See Practice Book § 60-1; see also *Connecticut Light & Power Company* v. *Lighthouse Landings, Inc.*, 279 Conn. 103–104, 900 A.2d 1242 (2006) (rules are to be interpreted liberally in cases where strict adherence will work surprise or injustice).

[13] In his appellate brief, the defendant has pointed out that his special defenses initially were filed in March, 2015, and that the justification special defense, as well as others, included the words trespass and disorderly conduct. The court found that the plaintiff had notice of the subject statute and that she had failed to file a motion to strike, when she could have brought the issue to the attention of the court before the parties presented evidence as to whether she was trespassing at the Sharon house. The plaintiff does not claim that she objected to the presentation of evidence regarding trespass.

[14] The plaintiff also claimed that the court should have instructed the jury that mere words cannot justify the use of force in defense of others. The plaintiff admits that she did not request this charge. The claim therefore has not been preserved, and we decline to review it. See *State* v. *Angell*, 36 Conn. App. 383, 393–94, 651 A.2d 263 (1994), aff'd, 237 Conn. 321, 627 A.2d 912 (1996).

[15] We cannot conclude that the guest's concern was unreasonable given the prevalence of gun violence in in our society, including domestic disputes. Jurors do not leave their common sense and life experience at the courthouse door. See *State* v. *Koslik,* 80 Conn. App. 746, 756, 837 A.2d 813, cert. denied, 268 Conn. 908, 845 A.2d 413 (2004).

[16] Plainly, there was sufficient evidence in the form of testimony for the jury to have concluded that the defendant acted in defense of others. He testified that as he escorted the plaintiff from the house, he "felt she was

trying to run back into the house and confront the guests,'' and that his guests "were terrified." According to his testimony, one of the guests had a "look of horror and fear" on her face.

During their deliberations, the jury asked to review the testimony of two of the defendant's guests. The defendant was afraid that the plaintiff was going to do harm to them. Teasdale testified that she "didn't know if [their] lives were in danger. I didn't know if she had a gun and she was going to go after him. . . . I felt trapped in that house, and I didn't know what was going on. I was concerned for our safety. . . . I didn't know what was going on out there, and I was really worried about our safety, my safety, everyone's safety." Osborne testified that she "was scared" of the plaintiff. When the defendant returned to the house, he told the guests that for their "safety I'm taking you to the train now." Osborn also testified that "we were all shaking. We were just kind of recapping how terrifying it was to be just completely ambushed by someone."

[17] The plaintiff also claims that the court's charge subverted Connecticut's well established policy against domestic violence. The plaintiff failed to raise this claim in the trial court; we therefore decline to consider it. "As our Supreme Court has explained, [t]he reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial— after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Iaquessa*, 132 Conn. App. 812, 815, 34 A.3d 1005 (2012). Nonetheless, it should go without saying that by affirming the judgment of the trial court, this court in no way would ever condone domestic violence or unjustified violence of any sort.

———————————————