Burke *v.* Mesniaeff

## ELIZABETH BURKE *v.* GREGORY MESNIAEFF
### (SC 20062)

Robinson, C. J., and Palmer, D'Auria, Mullins,
Kahn, Ecker and Vertefeuille, Js.

### *Syllabus*

The plaintiff sought to recover damages from the defendant, her former
husband, for, inter alia, intentional assault and battery in connection
with an incident that occurred during a tour of the defendant's historic
house. The defendant had purchased the house while the parties were
still married and recorded the deed in his name only. Although the house
was not the parties' primary marital residence, the plaintiff had spent
time there periodically and stored possessions there. At the time of the
incident, the parties were experiencing marital difficulties, and, after
the plaintiff learned that the defendant would be hosting a tour of the
house, she drove there to confront him. The tour was in progress when
the plaintiff arrived, and, after aggressively entering the house, she
became enraged and began screaming. The defendant and his guests
all were afraid of the plaintiff's conduct and believed that it posed a
risk to their safety. The defendant asked the plaintiff to leave, and, when
she refused, he took her by the arm and forcibly escorted her out of
the house and down the driveway. The plaintiff resisted the defendant's
escort, continued to shout at the defendant, and repeatedly attempted
to break loose of his hold in order to return to the house, but she was
unable to do so. The defendant raised a number of special defenses,
including justification and defense of others. At a charging conference,
the defendant clarified that his justification defense was essentially
based on a defense of premises defense and argued that his use of force
was justified because the plaintiff was trespassing on his property at
the time of the incident. In response, the plaintiff argued that trespass
was inapplicable because a spouse cannot, as a matter of law, commit
a criminal trespass on marital property in the absence of a court order
or pending divorce proceedings. Over the plaintiff's objection, however,
the trial court included in its jury instruction on justification a charge
on the law of criminal trespass. The jury subsequently returned a verdict
for the defendant, finding that, although the defendant's conduct consti-
tuted an intentional assault and battery, the plaintiff's recovery was
barred by the special defenses of justification and defense of others.
The trial court rendered judgment for the defendant in accordance with
the verdict, and the plaintiff appealed to the Appellate Court, which
affirmed the trial court's judgment. On the granting of certification,
the plaintiff appealed to this court. *Held* that, although the trial court
improperly charged the jury with respect to the defendant's special
defense of justification by including a charge on the law of criminal
trespass, that instructional impropriety was harmless because the evi-

Burke *v.* Mesniaeff

dence was sufficient to support the jury's independent finding with respect to the special defense of defense of others:

1. The trial court improperly charged the jury on the law of criminal trespass in its jury instruction on the defendant's special defense of justification: in determining whether a spouse has committed the crime of trespass, the focus of the inquiry is on whether that spouse had a right or privilege to enter or remain on the premises and not solely on whether the spouse has an ownership interest in the property or whether the property is marital in nature, and a spouse requesting a jury charge on criminal trespass must demonstrate that both parties understood that the trespassing spouse had relinquished his or her possessory interest in the property; in the present case, although the defendant had purchased the house and recorded the deed in his name only, the record demonstrated that the plaintiff had a possessory interest in the property, as she had a key to the house, went back and forth between the house and the parties' primary marital residence, and stored her possessions at the house, her driver's license listed the address of the house as her residential address, the parties were not estranged, separated or in the process of divorcing at the time of the incident, and the defendant's single request that the plaintiff leave the house, made during a marital dispute, was insufficient to support a criminal trespass instruction.

2. The jury was misled by the trial court's improper instruction on criminal trespass and defense of premises in arriving at its finding on the defendant's justification defense; the parties and the trial court treated that defense as the functional equivalent of a defense of premises defense, and the jury, by finding in favor of the defendant on his defense of justification, necessarily found that the defendant's use of force was justified by the plaintiff's commission or attempted commission of criminal trespass.

3. The trial court's improper instruction on criminal trespass and defense of premises did not affect the jury's independent finding with respect to the defense of others defense, and, therefore, the instructional error was harmless; although defense of others is a type of justification defense, the defendant pleaded and tried his case in a manner that would have led the jury to believe that his defense of others defense was separate and distinct from his justification defense, the trial court likewise treated those defenses as separate and independent in both the jury instructions and the verdict form and properly instructed the jury on the elements of defense of others, that instruction did not include any reference to criminal trespass or defense of premises, and the jury's finding with respect to the defense of others defense did not depend implicitly or explicitly on whether the jury had found the plaintiff to be a criminal trespasser and indicated that the jury properly distinguished among the various defenses.

4. The evidence was sufficient to support the jury's finding that the defendant was acting in defense of others when he forcibly removed the plaintiff from the house, as the jury reasonably could have found, on the basis

Burke *v.* Mesniaeff

of the totality of the evidence and the reasonable inferences drawn therefrom, that the defendant subjectively believed that the plaintiff posed an imminent risk of physical harm to his guests and that the defendant's use of force under the circumstances was objectively reasonable: the record demonstrated that, when the plaintiff arrived at the house, she was enraged, hysterical, and screaming at the defendant and the guests, her conduct was aggressive and out of control, and, on the basis of body language that the defendant had previously observed the plaintiff exhibit during prior incidents, the defendant was terrified that the plaintiff would harm the guests; moreover, the jury reasonably could have inferred, on the basis of her yelling during the incident, that the plaintiff believed that the defendant was having an extramarital affair with one of the guests, and two of the guests testified that they were afraid of the plaintiff and felt physically threatened by her out of control behavior.

(*Two justices concurring separately in one opinion*)

Argued December 19, 2018—officially released December 17, 2019

*Procedural History*

Action to recover damages for, inter alia, intentional assault and battery, and for other relief, brought to the Superior Court in the judicial district of Litchfield and transferred to the judicial district of Stamford-Norwalk, where the case was tried to the jury before *Lee, J.*; verdict and judgment for the defendant, from which the plaintiff appealed to the Appellate Court, *Lavine, Keller* and *Bishop, Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Gregory Jacob*, pro hac vice, with whom were *Mishima Alam*, pro hac vice, and *Anne C. Dranginis*, for the appellant (plaintiff).

*Charles S. Harris*, with whom was *Stephanie C. Laska*, for the appellee (defendant).

*Joseph D. Jean* filed a brief for the Connecticut Coalition Against Domestic Violence as amicus curiae.

*Opinion*

ECKER, J. The plaintiff, Elizabeth Burke, appeals from the Appellate Court's affirmance of the trial court's judgment rendered in favor of the defendant, Gregory

Burke *v.* Mesniaeff

Mesniaeff, after a jury returned a verdict finding that, although the defendant had perpetrated an intentional assault and battery on the plaintiff, his use of physical force was justified because, first, the plaintiff was trespassing at the time of the incident, and, second, he was acting in the defense of others. The plaintiff claims on appeal that (1) the jury should not have been instructed on the special defense of criminal trespass because the parties were married at the time of the assault and battery, and a spouse cannot, as a matter of law, trespass on marital property, and (2) the evidence was insufficient to support the jury's finding that the defendant was acting in defense of others. We conclude that the trial court improperly instructed the jury on criminal trespass and defense of premises as part of the jury charge on justification but that the instructional impropriety was harmless because the evidence was sufficient to support the jury's independent finding with respect to the special defense of defense of others. We therefore affirm the judgment of the Appellate Court.

I

The evidence regarding virtually every material aspect of the underlying events was the subject of vigorous dispute at trial. Construing the evidence in the light most favorable to sustaining the verdict, as we must; see, e.g., *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 442, 815 A.2d 119 (2003); the jury reasonably could have found the following facts relevant to this appeal. The plaintiff and the defendant were married in 1989. In 1998, the defendant, who is interested in the historic preservation of old homes, purchased a historic house in Sharon (Sharon house), which he titled solely in his name. Although the Sharon house was not the parties' primary marital residence, they both had Connecticut drivers' licenses listing the Sharon house as their residential address. The defendant spent more time at the Sharon house than the plaintiff, but the plaintiff had keys to the home, spent two weeks there in 2002 with

Burke *v.* Mesniaeff

the defendant, stayed there occasionally at other times, and stored personal possessions on the premises.

The Sharon house is subject to a historic preservation easement, which requires the home occasionally to be opened to the public for viewing. To fulfill this requirement, the defendant invited members of The Questers, a historical preservation organization, to tour the Sharon house on December 5, 2009, between the hours of 2 and 4:30 p.m. The defendant did not invite the plaintiff to attend the tour because she was not a member of The Questers, they were not "on the best of terms at that time," and he was "afraid that there could be some problems if she was there."

On the morning of December 5, 2009, the plaintiff went online to find out the date and time of the annual Christmas tree lighting ceremony in Sharon, only to discover that a tour of the Sharon house was scheduled for that afternoon. The plaintiff was "shocked and puzzled" because the defendant had not mentioned the tour, and she believed that he was at work that day. She called the defendant at his office but was unable to reach him. The plaintiff decided to go to the Sharon house and talk to the defendant because she was convinced that he would deny the existence of the historic house tour, and she "couldn't take the lying anymore . . . ."

Due to the snowy weather that afternoon, only three members of The Questers other than the defendant were present for the tour: Anne Teasdale, Suzanne Chase Osborne, and Lauren Silberman. When the plaintiff arrived at the Sharon house, the defendant was in the kitchen, Osborne was in the television room, and Teasdale and Silberman were in the living room. Rather than park her car in the driveway of the Sharon house, the plaintiff parked at an adjacent guest cottage and entered the house through the back door that leads into the television room. Osborne walked midway across

Burke *v.* Mesniaeff

the television room to greet the plaintiff, whom she believed was another guest arriving for the tour. The defendant entered the television room from the kitchen to greet the new arrival but, upon realizing it was the plaintiff, immediately instructed Osborne to go into the living room.

When the plaintiff opened the door and saw the defendant and Osborne alone together in the television room, she flew into a rage, screaming, "Who is that woman?" and "What are you doing in my house?" Osborne testified[1] that she was afraid of the plaintiff, who "came in like a raging bull, screaming," and who "was aggressively attempting to enter the house." The defendant testified that the plaintiff was "angry," "enraged" and "shrieking . . . hysterically high." The defendant stated: "There was body language that I recognized from previous such incidents, where I was terrified. . . . I was scared. I was scared of her demeanor and what she was saying and what I thought she could do, given the fact that we have been married for twenty years and, you know . . . I was afraid, but I was also embarrassed in front of the guests [who] were in the house, that this is my wife." Although the plaintiff did not verbally threaten to harm Osborne, the defendant believed that her out of control behavior posed a risk of harm to his guests.

The defendant approached the plaintiff and asked her to leave. He then took hold of the plaintiff's upper arm and "escorted" her out the door and down the driveway toward the Sharon town green, where he believed her car was parked. The plaintiff kept turning around, trying to return to the house, but the defendant would not permit her to do so. The defendant testified that the plaintiff was shrieking, "over and over, 'who's that woman in my house, what's going on here, what are

[1] Osborne was unavailable to testify at trial, so her deposition testimony was read into the record.

Burke *v.* Mesniaeff

you doing?' '' The plaintiff continued shouting, "[W]ho's that woman? What's going on between the two of you?"[2] The defendant "felt at that moment [that the plaintiff] was trying to run back into the house and confront the guests . . . and [he] was terrified of that."

Osborne and Teasdale watched through the windows as the defendant escorted the plaintiff to the end of the driveway. Teasdale testified that she was "very concerned for everybody, so I watched out of the side window and I saw . . . [the plaintiff] coming by, and she was screaming, and she was really mad. She was just out of control. Mad screaming . . . ." Teasdale continued: "I could hear the screaming and screaming, that same 'Who is that woman?' . . . . When I saw her in the side window, her face, she was screaming; she was shaking, [en]raged, screaming." Teasdale testified that she "felt in danger—[like] my life was in danger with what was going on by [the plaintiff's] showing up and screaming like that," and "I didn't know if [the plaintiff] had a gun . . . . I didn't know what was going on out there, and I was really worried about our safety, my safety, everyone's safety."

Although the plaintiff testified that the defendant "dragged" her down the driveway by her arm, head, and neck and repeatedly "flung" her to the ground and yanked her back up again, Osborne, Teasdale, and the defendant testified to a very different version of events. Teasdale explained that it "looked like [the plaintiff and the defendant] were walking as a couple. At that point, it looked like they were—he had his arm on her— around her elbow, like, you know, like a gentle—like a man would walk with a woman . . . ." Teasdale further explained that "it was snowy, and . . . it looked like [the plaintiff] was slipping, but [the defendant] . . .

---

[2] The defendant testified that the plaintiff had accused him of having an affair multiple times "during the course of the year 2009, up until this incident."

Burke *v.* Mesniaeff

kept her steady . . . .'' Osborne testified that the defendant escorted the plaintiff away from the house by putting ''his arm around her'' and that the level of force used by the defendant was ''appropriate for the occasion'' because it was ''[e]nough to keep her from getting back into the house and to move her down the driveway . . . .'' The defendant admitted that he held the plaintiff by the arm and forcibly led her down the driveway away from the house, even though she was actively resisting him, slipping in the snow, and trying to return to the house, but explained that he did so to protect his guests from harm.

After the parties reached the sidewalk, the plaintiff began waving her arms and yelling, ''Help, help! Call the police!'' Pierce Kearney, who was driving to the Christmas tree lighting ceremony with his family, observed the parties on the sidewalk. At first, Kearney believed that they were ''clowning around,'' but, when he slowed down the car and rolled down his windows, he could hear the plaintiff ''screaming that she was being assaulted by her husband and could you please call the police.'' Kearney pulled over, exited the car, and ran across the street, where he observed the defendant holding the plaintiff in ''a very aggressive fashion.'' The defendant told Kearney, ''It's okay, she's my wife.'' Kearney's wife called the police while he interposed himself between the parties and said, ''No, this is over.'' The defendant then turned around and returned to the Sharon house.

Upon reentering the Sharon house, the defendant apologized to his frightened guests and told them that he was going to drive them to the train station for their safety. The defendant drove Teasdale, Osborne, and Silberman to the train station and then returned to the Sharon house, where the police were present. The defendant cooperated with the police investigation, calmly informing the officers that he had escorted the plaintiff from the property because she was not wel-

Burke *v.* Mesniaeff

come at the Sharon house and that "he is the sole owner
of the house and his wife's name is not on the deed."

Sometime after the December 5, 2009 incident, the
parties divorced, and the plaintiff filed this action, seek-
ing compensatory damages from the defendant for per-
sonal injuries she sustained during the assault and bat-
tery. The complaint contained six counts: (1) intentional
assault and battery; (2) reckless assault and battery;
(3) negligent assault and battery; (4) intentional inflic-
tion of emotional distress; (5) negligent infliction of
emotional distress; and (6) reckless infliction of emo-
tional distress. The defendant raised, among others, the
following special defenses: (1) the plaintiff's injuries
were caused by her own contributory negligence; (2)
the plaintiff's action is barred by her own wrongful con-
duct, including her trespassing on the premises of the
Sharon house, exhibiting disorderly conduct, creating
a public disturbance, and/or assaulting and battering
the defendant; (3) his actions were in self-defense; (4)
his actions were in defense of others; and (5) his actions
were justified because "the plaintiff was trespassing on
[his] property."

After an eight day jury trial, the trial court held a
charge conference, at which it asked the defendant to
clarify the distinction between the special defenses of
"justification" and "wrongful conduct." The defendant
explained that "the case law is, if there is a criminal
trespass, you are justified in removing the person. That's
from the criminal statutes. So that's how that ties into
the trespass part of it. And the wrongful conduct, it
could be trespass. It could be [the plaintiff's] trying to
hit [the defendant]. It could be all these other things.
But for justification, if she was there after he ordered
her to leave, he has a physical right to remove her using
reasonable force." The trial court asked the defendant
whether his justification defense "is premised largely
on trespass." The defendant answered that he was "jus-
tified in the use of force" against the plaintiff because

"she became a criminal trespasser after [he] told her to leave and she refused."

As relevant to this appeal, the plaintiff objected to a jury instruction on criminal trespass on the ground that a wife cannot "commit a criminal trespass on marital property when there [are] no divorce proceedings" pending or court orders regarding the property. The defendant disagreed, arguing that the Sharon house was not marital property because it "was bought in his name [and] titled in his name." The trial court noted that "there is evidence on both sides" and, therefore, considered an instruction on criminal trespass to be appropriate.

The trial court instructed the jury that the defendant had raised "five special defenses . . . . They are: (1) [t]he contributory negligence of [the plaintiff]; (2) [j]ustification; (3) self-defense; (4) defense of others; [and] (5) [w]rongful conduct of [the plaintiff]." With respect to the second special defense, which the trial court referred to as "justification,"[3] the trial court instructed the jury as follows: "Justification is a general defense to the use of physical force. The use of physical force upon another person that results in actual injury, while usually a criminal assault, is not criminal if it is permitted or justified by a provision of law or statute.

"Therefore, when one who is accused of committing an assault claims that he or she acted under a legal justification, the jury must examine the circumstances

[3] As we discuss in greater detail later in this opinion, the trial court adopted the defendant's inexact and potentially confusing nomenclature to classify the various special defenses relevant to this appeal. Properly conceived, the defense of justification is a broad category that subsumes more specific claims such as self-defense, defense of others, and defense of premises. See part II B 1 of this opinion. At trial, however, the court treated the defense of justification as synonymous with only one subtype of the broader theory— the use of physical force in defense of premises. The plaintiff did not provide suggested instructions that would have alleviated this confusion. This opinion adheres to the terminology used at trial to avoid any further confusion.

Burke *v.* Mesniaeff

and discover whether the act was truly justified. The court's function in instructing the jury is to tell the jury the circumstances in which the use of physical force against another person is legally justified.

"Justification defenses focus on the defendant's reasonable beliefs as to circumstances and the necessity of using force. The jury must view the situation from the perspective of the defendant. However, the defendant's belief ultimately must be found to be reasonable. For example, a person in possession or control of premises is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises. A person commits criminal trespass when, knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises, after an order to leave, or after an order not to enter, that was personally communicated to such person by the owner of the premises.

"The claim focuses on what the defendant reasonably believes under the circumstances and presents a question of fact. The jury's initial determination requires the jury to assess the veracity of witnesses, often including the defendant, and to determine whether the defendant's account of his belief at the time of the confrontation is in fact credible. The jury must make a further determination as to whether that belief was reasonable, from the perspective of a reasonable person in the defendant's circumstances.

"The defendant's conduct must be judged ultimately against that of a reasonably prudent person. It is not required that the jury find that the victim was, in fact, using or about to use physical force against the defendant.''

Burke *v.* Mesniaeff

The trial court then proceeded to instruct the jury regarding the defenses of self-defense and defense of others. This portion of the jury charge provided as follows: "The defendant raised the issues of self-defense and defense of others as to the incident on December 5, 2009. After you have considered all of the evidence in this case, if you find that the plaintiff has proved her claims, you must go on to consider whether . . . the defendant acted in [the defense] of himself or of others.

"A person is justified in the use of force against another person that would otherwise be illegal if he is acting in the defense of himself or others under the circumstances.

"The statute defining self-defense reads in pertinent part as follows:

" '[A] person is justified in using reasonable physical force upon another person to defend himself [or a third person] from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose . . . .'

"The statute requires that, before a defendant uses physical force upon another person to defend himself, he must have two 'reasonable beliefs.' The first is a reasonable belief that physical force is then being used or about to be used upon him. The second is a reasonable belief that the degree of force he is using to defend himself from what he believes to be an ongoing or imminent use of force is necessary for that purpose.

"A defendant is not justified in using any degree of physical force in self-defense against another if he provokes the other person to use physical force against him. Also, a defendant is not justified in using any degree of physical force in self-defense against another if he is the initial aggressor. A defendant cannot use excessive force in his self-defense or defense of others."

Burke *v.* Mesniaeff

After deliberating for more than one day and asking, among other things, to rehear the testimony of Osborne and Teasdale regarding their views of the alleged assault and battery, the jury returned a verdict in favor of the defendant. The plaintiff's verdict form reveals the following basis for the jury's verdict.[4] The jury found that the defendant's conduct on December 5, 2009, consti-

---

[4] The plaintiff's verdict form included, in relevant part, the following questions; the jury's answers are in brackets.

"1. Assault and Battery (Answer All)

"a. We find that the conduct of [the defendant] on December 5, 2009, constituted intentional assault and battery.

"Yes _____[X]_____No _____

"b. We find that the conduct of [the defendant] on December 5, 2009, constituted reckless assault and battery.

"Yes _____No _____[X]_____

"c. We find that the conduct of [the defendant] on December 5, 2009, constituted negligent assault and battery.

"Yes _____No _____[X]_____

"2. Infliction of Emotional Distress (Answer All)

"a. We find that the conduct of [the defendant] on December 5, 2009, constituted intentional infliction of emotional distress.

"Yes _____No _____[X]_____

"b. We find that the conduct of [the defendant] on December 5, 2009, constituted negligent infliction of emotional distress.

"Yes _____No _____[X]_____

"3. Proximate Cause

"We find that the conduct of [the defendant] on December 5, 2009 was a substantial factor in causing or aggravating the injuries and damages of [the plaintiff].

"Yes _____[X]_____No _____

"(If you answered no, you must render a Defendant's Verdict, using the Defendant's Verdict Form.)

"4. Defendant's Defenses (Answer All)

"a. We find [the plaintiff's] recovery is barred by the doctrine of justification

"Yes _____[X]_____No _____

"b. We find [the plaintiff's] recovery is barred by the doctrine of self-defense

"Yes _____No _____[X]_____

"c. We find [the plaintiff's] recovery is barred by the doctrine of defense of others

"Yes _____[X]_____No _____

"d. We find [the plaintiff's] recovery is barred by the doctrine of wrongful conduct

"Yes _____No _____[X]_____

"e. With respect to a finding of negligent assault and battery or of negligent infliction of emotional distress, we find that the percentage of negligence attributable to [the defendant] is: _____ . . . ."

Burke *v.* Mesniaeff

tuted an intentional assault and battery and that the defendant's conduct proximately caused or aggravated the plaintiff's injuries and damages. The jury also found, however, that the plaintiff's recovery was barred by the defendant's special defenses of justification and defense of others. The jury rejected the plaintiff's claims of intentional and negligent infliction of emotional distress, and also rejected the defendant's special defenses of self-defense and wrongful conduct. The trial court rendered judgment in favor of the defendant, and the plaintiff appealed to the Appellate Court.

On appeal to the Appellate Court, the plaintiff raised two claims: (1) the jury improperly was charged on the defendant's special defense of justification because the trial court incorporated an instruction on criminal trespass, even though a spouse cannot trespass on marital property as a matter of law;[5] and (2) the evidence was insufficient to support the defendant's special defense of defense of others. See *Burke* v. *Mesniaeff*, 177 Conn. App. 824, 826, 173 A.3d 393 (2017). With respect to the plaintiff's first claim, the Appellate Court determined that it need not decide whether the trial court improperly instructed the jury on criminal trespass because it "construe[d] the jury's findings to indicate [that] it decided that the plaintiff was not trespassing." Id., 837. The Appellate Court reasoned that, even though "tres-

---

[5] The plaintiff also claimed that the trial court improperly instructed the jury on criminal trespass because "the defendant failed to plead that his special defenses relied on a criminal statute, and . . . it was plain error for the court not to include an instruction on the duty to retreat and the mere words doctrine." *Burke* v. *Mesniaeff*, supra, 177 Conn. App. 836. The Appellate Court noted that our rules of practice require a special defense grounded on a statute to be specifically identified by its number; see Practice Book § 10-3; but held that the improper instruction on criminal trespass was harmless because "the jury did not find that [the plaintiff's] claims were barred by the defendant's wrongful conduct special defense." *Burke* v. *Mesniaeff*, supra, 838. The Appellate Court further held that the plaintiff could not prevail under the plain error doctrine "because the duty to retreat exception on which she relies pertains to the use of deadly force, which is not an issue in this case"; id., 843; and the plaintiff did not request an instruction on the mere words doctrine. Id., n.14.

Burke *v.* Mesniaeff

passing is understood to be a form of wrongful con-
duct," the jury did not find that the plaintiff's recovery
was barred by the doctrine of wrongful conduct, and,
therefore, the jury necessarily found that the plaintiff
was not trespassing. Id. With respect to the plaintiff's
second claim regarding the sufficiency of the evidence
of the defense of others defense, the Appellate Court
determined that "the jury's verdict is supported by the
evidence and by its commonsense evaluation of what
happened during the incident." Id., 846. The Appellate
Court therefore affirmed the judgment of the trial court.
Id.

Judge Bishop filed a dissenting opinion in which he
expressed his view that the "wrong minded notion" of
"the plaintiff as a trespasser in a marital residence"
likely "confus[ed] the jury and, as a result, render[ed]
its verdict unreliable." Id., 847 (*Bishop, J.*, dissenting).
Judge Bishop believed that there was no "basis for the
court to instruct the jury on the law of criminal tres-
pass"; id., 858; because "both parties understood the
Sharon house to be a marital residence," and, as such,
the plaintiff was licensed and privileged to be on the
property notwithstanding the defendant's title owner-
ship. Id., 859. Judge Bishop also believed that the evi-
dence was insufficient to support the jury's finding of
defense of others because there was no objective evi-
dence "that, at any time, the plaintiff, by gesture or
words, made any threats against the houseguests." Id.,
862. Accordingly, Judge Bishop would have reversed
the judgment of the trial court and remanded the case
for a new trial. Id., 863.

The plaintiff filed a motion for reconsideration en
banc or, in the alternative, for reconsideration, which
the Appellate Court denied. This certified appeal
followed.[6]

---

[6] We granted the plaintiff's petition for certification to appeal, limited to
the following issue: "Did the Appellate Court properly affirm the trial court's
judgment when it determined that (1) the trial court did not improperly

Burke *v.* Mesniaeff

## II

The plaintiff claims that the trial court improperly instructed the jury on the law of criminal trespass because she, as the defendant's spouse, had a legal right to be at their shared marital residence, regardless of the title ownership of the property. She argues that the defendant's justification defense was premised entirely on the law of criminal trespass, and, therefore, the jury necessarily found that the plaintiff was a criminal trespasser at the time of the assault and battery. She further argues that the improper instruction on criminal trespass irrevocably tainted the jury's finding that the defendant was acting in defense of others because a criminal trespasser's "refusal to leave when so instructed by the 'rightful owner' is inherently threatening . . . ." Alternatively, the plaintiff contends that the evidence was insufficient to support the jury's finding of defense of others because the defendant "provided no evidence that he believed [the plaintiff] was imminently about to use physical force against his houseguests, much less any evidence that such a belief would have been reasonable." (Footnote omitted.)

The defendant responds that the trial court's instruction on the law of criminal trespass was proper because the Sharon house was not a marital residence but the defendant's individually owned property, and the plaintiff did not acquire an ownership interest in the Sharon house by virtue of the parties' marriage. Because it was undisputed that the plaintiff refused to leave after being instructed to do so by the defendant-owner, the defendant contends that the evidence supported the trial court's criminal trespass instruction. Lastly, the defendant argues that the evidence was sufficient to support

charge the jury on the defendant's justification defense of criminal trespass, (2) the special defense of others was not barred by insufficient evidence, and (3) no finding needed to be made on the plaintiff's rights to the property?'' *Burke* v. *Mesniaeff*, 328 Conn. 901, 177 A.3d 564 (2018).

Burke *v.* Mesniaeff

the jury's finding that he was acting in defense of others in light of his testimony, as well as the testimony of Teasdale and Osborne, that the plaintiff's aggressive and out of control behavior posed a risk of harm to his guests.

A

We first address the plaintiff's claim that the trial court's instruction on the defendant's special defense of justification was improper because one cannot criminally trespass on the property of his or her spouse. "Our analysis begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 400, 880 A.2d 151 (2005).

To determine whether the trial court properly instructed the jury on criminal trespass, we turn first to General Statutes § 53a-20, which governs the use of physical force in defense of premises.[7] Section 53a-20

_____

[7] Section 53a-20 is a criminal statute, but the parties do not question its general applicability to civil actions, and, therefore, we assume for the purpose of this appeal that § 53a-20 provides a special defense to the tort of intentional assault and battery, provided there is sufficient evidence to support the defense. Cf. *Brown* v. *Robishaw*, 282 Conn. 628, 636, 922 A.2d 1086 (2007) ("it is well established that the defense of self-defense is available to a defendant faced with the intentional torts of civil assault and battery, provided that there is sufficient evidence in support of that defense").

Burke *v.* Mesniaeff

provides in relevant part that ''[a] person in possession or control of premises, or a person who is licensed or privileged to be in or upon such premises, is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises . . . .'' A person commits a criminal trespass when, ''[k]nowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person . . . .'' General Statutes § 53a-107 (a) (1). Both criminal trespass and defense of premises contain a scienter requirement. Specifically, in order to commit a criminal trespass, the trespasser must know that ''he is not privileged or licensed to enter or to remain on the premises''; *State* v. *Garrison*, 203 Conn. 466, 474, 525 A.2d 498 (1987); and, in order to be justified in using physical force to prevent or terminate the commission or attempted commission of a criminal trespass, the person in possession or control of the premises must ''reasonably [believe]'' that the use of force is ''necessary to prevent or terminate the commission or attempted commission of a criminal trespass . . . .'' General Statutes § 53a-20.

Our sister states uniformly have held that, in determining whether one spouse has committed the crime of trespass (or a similar crime) on the property of the other spouse, the focus is not on ownership per se but, rather, on the ''trespassing'' spouse's right or privilege to enter or remain on the property. See, e.g., *People* v. *Johnson*, 906 P.2d 122, 125 (Colo. 1995) (holding that, in determining whether estranged spouse has committed crime of trespass or burglary against other spouse, ''the focus is [on] the possessory rights of the parties, and not their ownership rights''); *State* v.

Burke *v.* Mesniaeff

*Hagedorn*, 679 N.W.2d 666, 671 (Iowa 2004) (upholding defendant's burglary conviction, even though he formerly had lived in marital home, because his wife had removed his personal belongings, told him on multiple occasions that he no longer was welcome, and changed locks); *Commonwealth* v. *Robbins*, 422 Mass. 305, 315 and n.5, 662 N.E.2d 213 (1996) (holding that marital relationship does not preclude burglary conviction, regardless of title or leasehold ownership, and that jury must be instructed on "factors that bear on a defendant's right to enter'' spouse's premises); *State* v. *Spence*, 768 N.W.2d 104, 108–10 (Minn. 2009) (upholding defendant's burglary conviction, even though he co-owned residence with his estranged spouse, because property owners can divest themselves of possessory interests by agreement); *State* v. *McMillan*, 158 N.H. 753, 759, 973 A.2d 287 (2009) (concluding that "holding a legal interest in property, such as a leasehold, is not dispositive on the issue of license or privilege" to enter premises but, rather, "the fact finder must look beyond legal title and evaluate the totality of the circumstances in determining whether a defendant had license or privilege to enter"); *State* v. *Parvilus*, 332 P.3d 281, 283, 286 (N.M. 2014) (upholding defendant's burglary conviction, despite statute providing that "neither [spouse] can be excluded from the other's dwelling," because ''marital property provisions . . . do not provide immunity from prosecution for burglary of a spouse's separate residence'' [internal quotation marks omitted]); *State* v. *Lilly*, 87 Ohio St. 3d 97, 102, 717 N.E.2d 322 (1999) ("in Ohio, one can commit a trespass and burglary against property of which one is the legal owner if another has control or custody of that property"); *State* v. *Wilson*, 136 Wn. App. 596, 606–607, 150 P.3d 144 (2007) (noting that, "[i]n domestic violence cases, determining possession of a residence presents a murky area of law," but "Washington case law is clear

Burke *v.* Mesniaeff

that an offender can burglarize the residence of his or her spouse or partner despite legal ownership of property''). We find these precedents persuasive and hold that ''whether one has a right or privilege to enter property is not determined solely by [the spouse's] ownership interest in the property, or by whether the structure can be characterized as the 'marital home,' '' but, rather, ''[by] whether the [spouse] had any possessory or occupancy interest in the premises at the time of entry.'' *State* v. *Hagedorn*, supra, 670.

Whether one spouse has a possessory or occupancy interest in the premises of the other spouse at the time of entry is a fact intensive inquiry that depends on multiple factors, including, but not limited to, the relationship status of the spouses (i.e., whether the parties are legally separated or involved in divorce proceedings), the existence of extended periods of separation, the applicability of any relevant court orders, the establishment of separate residences, the existence of any agreements regarding access to the subject property, and the method and manner of entry. See, e.g., *Commonwealth* v. *Robbins*, supra, 422 Mass. 315; *State* v. *Spence*, supra, 768 N.W. 2d 109–10. In light of the scienter requirements contained in the criminal trespass and defense of premises statutes, the party requesting a jury charge on criminal trespass and defense of premises in the context of a case involving a spousal relationship must adduce evidence demonstrating that *both* parties ''understood that the possessory interest of one was being relinquished, even if it was relinquished begrudgingly or reluctantly.'' *State* v. *O'Neal*, 103 Ohio App. 3d 151, 155, 658 N.E.2d 1102, appeal dismissed, 73 Ohio St. 3d 1411, 651 N.E.2d 1309 (1995). In general, when the marital relationship is legally intact and both spouses have a possessory or occupancy interest in the premises, an isolated request to leave during a heated marital argument will not suffice to revoke one spouse's possessory

Burke *v.* Mesniaeff

or occupancy interest in the premises vis-à-vis the other. See, e.g., id.; cf. *State* v. *Garrison*, supra, 203 Conn. 473–74 (holding that evidence was insufficient to support defense of premises defense, even though defendant had asked victim, who was dating and living with defendant's sister in shared apartment, to leave apartment, because sister had not revoked victim's possessory or occupancy interest in "manifest fashion"; instead, because of couple's "stormy relationship" and sister's intoxication, "her order to the victim to leave was simply a part of the couple's ongoing relationship").

In the present case, the undisputed evidence established that the plaintiff had a possessory or occupancy interest in the Sharon house at the time of her entry on December 5, 2009. The plaintiff had a key to the Sharon house, would "go back and forth" between there and the parties' primary marital residence, and stored her personal possessions on the premises. The plaintiff had obtained a Connecticut driver's license that listed the Sharon house as her residential address, and she was involved in the management and improvement of the property.[8] Furthermore, although the parties' marital relationship was strained, they were neither estranged nor separated at the time of the incident, and a dissolution action had not yet been commenced. In light of these facts, the defendant's request that the plaintiff leave the Sharon house, made in the midst of a heated marital dispute, plainly was insufficient to support the trial court's criminal trespass instruction. See, e.g., *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, 254 Conn. 131, 139, 757 A.2d 516 (2000) (trial court's instructions must be "reasonably supported by the evidence" [internal quotation marks omitted]).

Our conclusion is bolstered by the fact that the defendant himself did not believe the plaintiff was trespass-

_____

[8] The undisputed evidence established that the plaintiff had painted the interior of the Sharon house and managed the rental of an adjacent guest cottage.

Burke *v.* Mesniaeff

ing when he used force to remove her from the Sharon house on the afternoon of December 5, 2009. At trial, the defendant testified that ''we were married at the time so I didn't think . . . [trespassing] was an issue at all.'' The defendant explained that it did not occur to him that the plaintiff may have been a criminal trespasser until sometime after the incident. Because the defendant did not believe that the use of force was ''necessary to prevent or terminate the commission or attempted commission of a criminal trespass''; General Statutes § 53a-20; he lacked the requisite state of mind to support a defense of premises instruction.

B

Having determined that the trial court improperly instructed the jury on criminal trespass and defense of premises, we next consider whether the improper jury instruction was harmful. It is well established that ''not every improper jury instruction requires a new trial because not every improper instruction is harmful. [W]e have often stated that before a party is entitled to a new trial . . . he or she has the burden of demonstrating the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict.'' (Internal quotation marks omitted.) *Mahon* v. *B.V. Unitron Mfg.*, *Inc.*, 284 Conn. 645, 656, 935 A.2d 1004 (2007). ''When two or more separate and distinct defenses . . . are present in a case, an error in the charge as to one normally cannot upset'' the jury's verdict if the jury was ''properly charged as to the remaining defenses.'' *Dinda* v. *Sirois*, 166 Conn. 68, 75, 347 A.2d 75 (1974).

We conclude that the plaintiff has not established that the improper instruction in this case affected the jury's verdict. As we previously explained, the jury returned a verdict in favor of the defendant on the basis of its findings in connection with two different special defenses: justification and defense of others. These special defenses were pleaded and charged as separate and distinct theories of defense at trial; the justification

Burke *v.* Mesniaeff

defense was limited to the plaintiff's alleged criminal trespass and the defendant's corresponding right to use physical force in defense of his premises; see part II B 1 of this opinion; whereas the defense of others defense was premised on the plaintiff's alleged threatening behavior and the defendant's corresponding right to use physical force to protect his guests from imminent physical harm. We conclude that the jury charge on defense of others was insulated from any taint affecting the justification charge and, consequently, hold that the jury's finding in the defendant's favor on the basis of his special defense of defense of others renders harmless the instructional impropriety on the special defense of justification.

1

We first address whether the trial court's improper instruction on justification affected the jury's finding on that special defense. As background, we point out that the defense of justification, although not treated as such in the present case, ordinarily is understood to encompass the defense of premises, self-defense, and the defense of others. See *State* v. *Bryan*, 307 Conn. 823, 832, 60 A.3d 246 (2013) ("[t]he defense of others, like self-defense, is a justification defense"); *State* v. *Garrison*, supra, 203 Conn. 472 ("[j]ustification for the use of deadly force may also be found in the provisions of § 53a-20 dealing with defense of premises"). "These defenses operate to exempt from punishment otherwise criminal conduct when the harm from such conduct is deemed to be outweighed by the need to avoid an even greater harm or to further a greater societal interest. . . . Thus, conduct that is found to be justified is, under the circumstances, not criminal."[9] (Internal quotation marks omitted.) *State* v. *Bryan*, supra, 832–33.

---

[9] Wrongful conduct, by contrast, is not a justification defense; it is a limitation on liability in civil actions premised on the notion that a plaintiff should not recover "for injuries that are sustained as the direct result of his or her knowing and intentional participation in a criminal act." *Greenwald* v. *Van Handel*, 311 Conn. 370, 377, 88 A.3d 467 (2014).

Burke *v.* Mesniaeff

The record reflects that the defendant's justification defense in this case was not framed in accordance with its conventional understanding. Instead, the defendant used the defense of "justification" to encompass only his defense predicated on criminal trespass and defense of premises. The defendant thus pleaded that his use of force was justified, in relevant part, because "the plaintiff was trespassing on the defendant's property . . . knowing that she was not licensed or privileged to do so . . . [d]espite the defendant, who is the owner of the property, directing her to leave . . . ." At the charge conference, the defendant explained that his justification defense was based on the plaintiff's alleged criminal trespass, and the jury instructions, as well as the plaintiff's verdict form, listed justification as one of the defendant's five freestanding special defenses. Although the jury was informed that "[j]ustification is a general defense to the use of physical force," the jury was given only one example of a justifiable use of physical force in the justification instruction—defense of premises. The jury also was informed that, in order to find that the defendant's use of force was justified, "[i]t is not required that the jury find that the victim was, in fact, using or about to use physical force against the defendant." This is a correct statement of the law if the defendant's justification defense is limited to defense of premises; see General Statutes § 53a-20; but an incorrect statement of the law if the defendant's justification defense included self-defense and defense of others. See General Statutes § 53a-19 (a) (requiring defendant to have reasonable belief of "imminent use of physical force"); see also part III of this opinion.[10]

---

[10] The idiosyncratic terminology adopted by the trial court in the jury charge, following the defendant's lead, was carried over to the jury interrogatories, which also treated the special defenses separately. In relevant part, the jury was requested to answer four different questions, one for each special defense. See footnote 4 of this opinion. Again, the special defense of justification was kept separate and distinct from the special defense of defense of others.

Burke *v.* Mesniaeff

On the basis of the foregoing, it is clear that the defendant's justification defense was treated by the parties, the trial court, and the jury as the functional equivalent of a defense of premises defense. By finding in favor of the defendant on his special defense of justification, the jury necessarily found that the defendant's use of force was justified by the plaintiff's commission or attempted commission of the crime of trespass. Therefore, the jury was misled by the improper instruction on criminal trespass and defense of premises in arriving at its finding on the defendant's justification defense.[11]

2

We next address whether the improper jury instruction on criminal trespass and defense of premises misled the jury with respect to the special defense of

---

[11] We disagree with the Appellate Court majority that the plaintiff was not harmed by the improper justification instruction because the jury's finding that the plaintiff's recovery "was not barred by the doctrine of wrongful conduct" must mean that the jury "decided that the plaintiff was not trespassing." *Burke* v. *Mesniaeff*, supra, 177 Conn. App. 837. We agree with the dissenting opinion that the jury's findings on the special defenses of justification and wrongful conduct cannot be deemed irreconcilable for two reasons. See id., 854 (*Bishop, J.*, dissenting) ("I do not believe it is reasonable to glean from the jury's answer to the wrongful conduct interrogatory that the jury found that the plaintiff had not been trespassing"); see also *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 270, 698 A.2d 838 (1997) (noting that court has duty to "harmonize" answers to jury interrogatories if possible). First, the jury was instructed that the defendant's special defense of wrongful conduct was predicated on the defendant's claim that the plaintiff "was trespassing on the premises *and* exhibiting disorderly conduct *and/ or* creating a disturbance." (Emphasis added.) The use of the conjunctive "and" necessarily conveyed to the jury that it had to find *both* that the plaintiff had committed a criminal trespass *and* that she had engaged in disorderly conduct *and/or* creating a disturbance. The jury reasonably may have found that, although the plaintiff had committed the crime of trespass, she had not committed the crimes of disorderly conduct and/or creating a disturbance, and, therefore, her recovery was not barred by the wrongful conduct doctrine. Second, the jury was instructed that "[t]he wrongful conduct defense does not apply if you find that the plaintiff sustained injuries and damages independent of any wrongful conduct of the plaintiff." The jury reasonably may have found that the plaintiff sustained her injuries after the completion of the commission or attempted commission of the criminal trespass, and, therefore, her recovery was not barred by the wrongful conduct doctrine.

Burke *v.* Mesniaeff

defense of others. As we previously explained, defense of others is a type of justification defense; see *State* v. *Bryan*, supra, 307 Conn. 832; but the present case was pleaded, tried, and charged in a manner that reasonably would have led the jury to believe that defense of others was an independent, freestanding special defense separate and distinct from the justification defense.[12] The trial court's jury instruction on defense of others did not include any reference to criminal trespass or defense of premises. Rather, the trial court properly instructed the jury that " '[a] person is justified in using reasonable physical force upon another person to defend himself [or a third person] from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose.' " See General Statutes § 53a-19 (a). Thus, in arriving at its verdict, the jury necessarily found that (1) the defendant believed that the plaintiff was about to use imminent physical force against his guests, (2) his belief was reasonable, and (3) he used a degree of force that he reasonably believed to be necessary to defend his guests.[13] None of these findings depended, either implicitly or explicitly, on the plaintiff's status as a criminal trespasser.

___

[12] The trial court combined self-defense and defense of others in a single instruction.

[13] As we previously explained, the details surrounding the assault were hotly disputed at trial, and the jury was presented with two very different versions of events. According to the plaintiff, the defendant perpetrated a violent and unprovoked physical assault, during which he dragged her out of the house and down the driveway, flinging her to the ground and yanking her back up multiple times. The defendant, Teasdale, and Osborne, by contrast, testified that the defendant's unwanted physical contact with the plaintiff was provoked by the plaintiff's out of control verbal and physical behavior and consisted only of holding her arm "like a man would walk with a woman" and escorting her away from the Sharon house and the defendant's frightened guests. The jury interrogatories reveal that the jury resolved this factual dispute in favor of the defendant, finding that the defendant used an amount of force that was reasonable under the circumstances to protect his guests from the imminent threat of harm posed by the plaintiff. Given the jury's finding that the defendant's use of force was reasonable, we can fairly presume that the jury did not credit the plaintiff's

Burke *v.* Mesniaeff

The plaintiff nonetheless argues that criminal tres-passers are "inherently threatening," and, therefore, the trial court's improper reference to criminal trespass in its instruction on justification "infected . . . the entire trial, including [the defendant's] claim of 'defense of others . . . .' " We disagree. As we discussed, both the jury instruction and the verdict form treated the special defenses as separate and independent legal theories. Confusion was highly unlikely under these circum-stances because there was neither any linguistic overlap between the justification and defense of others jury instructions, nor was there anything about the verdict form that created any discernible risk of confusion. The jury's disparate findings also indicate to us that it did not lump together the defenses in an undifferentiated manner but, instead, distinguished among those defenses, rejecting some while crediting others. See footnote 4 of this opinion; see also *DeMarkey* v. *Frat-turo*, 80 Conn. App. 650, 660, 836 A.2d 1257 (2003) (hold-ing that jury's response to interrogatories indicated that it was not misled by allegedly improper jury instruction, and any error therefore was harmless). Moreover, although criminal trespass may pose an inherent risk of harm to property and privacy rights; see *State* v. *Robinson*, 105 Conn. App. 179, 193, 937 A.2d 717 (2008) ("[t]he rationale for the offense of criminal trespass is to protect property, and the privacy interest inhering in that property, from unwanted intruders"), aff'd, 290 Conn. 381, 963 A.2d 59 (2009); it does not, in the absence of additional facts, pose a similar inherent risk of harm to the *physical safety* of invitees who happen to be on the property.[14] Indeed, the crime of trespass can be committed even if the property is uninhabited, unoccu-

testimony that the defendant "flung [her]" to the ground multiple times and "jerked [her] up . . . by [her] right arm" each time that she struck the ground.

[14] Recall that the jury rejected the defendant's special defense of *self-*defense, thereby indicating that it did not find the plaintiff's trespassing behavior to be so "inherently threatening" as to justify the use of force in self-defense.

Burke *v.* Mesniaeff

pied, or consists of public land. See General Statutes §§ 53a-107 through 53a-109. We conclude that the instructional impropriety was harmless because it did not affect the jury's independent finding with respect to the defendant's defense of others defense.

III

The only remaining issue is whether the evidence was sufficient to support the jury's finding that the defendant was acting in defense of others when he used physical force to remove the plaintiff from the Sharon house on December 5, 2009. "The standards governing our review of a sufficiency of evidence claim are well established and rigorous. . . . [I]t is not the function of this court to sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . In making this determination, [t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. . . . In other words, [i]f the jury could reasonably have reached its conclusion, the verdict must stand, even if this court disagrees with it." (Citations omitted; internal quotation marks omitted.) *Carrol* v. *Allstate Ins. Co.*, supra, 262 Conn. 442.

"We apply this familiar and deferential scope of review, however, in light of the equally familiar principle" that there must be "sufficient evidence to remove the jury's function of examining inferences and finding facts from the realm of speculation." (Internal quotation marks omitted.) Id. The jury's verdict cannot be upheld if the jury ''reasonably and legally could not have reached the determination that [it] did in fact reach'' or if, "without conjecture, [it] could not have found a required element of the cause of action . . . ." Id.

This is a civil case, but self-defense or, by extension, a defense of others defense "is available to a defendant faced with the intentional torts of civil assault and battery, provided that there is sufficient evidence in support of that defense.'' See *Brown* v. *Robishaw*, 282 Conn. 628, 636, 922 A.2d 1086 (2007). The defendant bears the initial burden to produce sufficient evidence to inject the defense of others into the case; id., 643; but this burden of production "is slight.'' (Internal quotation marks omitted.) *State* v. *Terwilliger*, 294 Conn. 399, 408, 984 A.2d 721 (2009). To prevail on a defense of others defense, "a defendant must introduce evidence that the defendant reasonably believed [the attacker's] unlawful violence to be imminent or immediate.'' (Internal quotation marks omitted.) *State* v. *Bryan*, supra, 307 Conn. 835; see General Statutes § 53a-19 (a). The standard encompasses both a subjective and objective component: (1) the defendant must have subjectively believed that an attack was imminent; and (2) the defendant's subjective belief must have been objectively reasonable under the circumstances. See, e.g., *State* v. *Prioleau*, 235 Conn. 274, 286–87, 664 A.2d 743 (1995) (explaining that "subjective-objective inquiry'' requires jury to "make two separate affirmative determinations in order for the defendant's'' special defense to succeed: [1] "the jury must determine whether, on the basis of all of the evidence presented, the defendant in fact had believed that he had needed to use . . . physical force . . . in order to repel the victim's alleged attack''; and [2] "the jury must make a further determination as to whether *that belief* was reasonable, from the perspective of a reasonable person in the defendant's circumstances'' [emphasis in original]).

The plaintiff contends that the evidence was insufficient to establish that the defendant subjectively believed that the plaintiff "was *imminently* about to use physical force against his houseguests, much less . . . that such a belief would have been reasonable.''

Burke *v.* Mesniaeff

(Emphasis added; footnote omitted.) We disagree. Although the evidence surrounding the defendant's use of physical force against the plaintiff was conflicting, the jury reasonably could have found that, when the plaintiff arrived at the Sharon house, she was enraged, hysterical, and screaming "[w]ho is that woman" and "[w]hat are you doing in my house?" The plaintiff's behavior was described as "aggressive" and "out of control," and the defendant testified that, on the basis of "body language that [he] recognized from previous such incidents," he was "terrified" that the plaintiff would harm his guests. Throughout the December 5, 2009 incident, the plaintiff continually tried to return to the house. The defendant testified that he believed that the plaintiff was "trying to run back into the house and confront the guests," and he continued to use physical force against the plaintiff "[t]o protect [his] guests from harm's way." We conclude that this evidence was sufficient to support the jury's finding that the defendant subjectively believed that the plaintiff posed an imminent risk of physical harm to his guests.

The plaintiff also contends that the defendant's subjective belief was not objectively reasonable under the circumstances because she never made any verbal threats and the defendant's guests "remained safely ensconced inside the house during the entirety of the assault . . . ." Again, we are not persuaded. First, verbal threats are not required if the assailant's physical acts and behavior support a "reasonably perceived threat of [imminent] physical force . . . ." *State* v. *Jimenez*, 228 Conn. 335, 341, 636 A.2d 782 (1994). Although a defense of others defense does "not encompass a preemptive strike," neither does it obligate the defendant "to stand by meekly and wait until an assailant [strikes] the first blow before responding." (Internal quotation marks omitted.) *State* v. *Jones*, 320 Conn. 22, 53–54, 128 A.3d 431 (2015). Second, the physical distance between the plaintiff and Osborne at the time

Burke *v.* Mesniaeff

the defendant intercepted the plaintiff is unclear, but the jury heard evidence that the plaintiff was enraged, out of control, and "aggressively attempting to enter" the room in which Osborne was present.[15] The plaintiff repeatedly was screaming "[w]ho is that woman," "[w]hat's going on between the two of you," and "I know what's going on," from which the jury reasonably could have inferred, on the basis of the totality of the evidence, that the plaintiff was accusing the defendant and Osborne of having an extramarital affair. Under these factual circumstances, "we cannot . . . conclude that the evidence introduced at trial was of such a nature that the jury needed to resort to speculation that the defendant reasonably believed that [he] had to act in [defense of his guests]." (Internal quotation marks omitted.) *State* v. *Edwards*, 234 Conn. 381, 390, 661 A.2d 1037 (1995). But cf. *State* v. *Bryan*, supra, 307 Conn. 837–39 and n.7 (holding that there was no imminent threat of harm to victim because undisputed evidence established that assailant was moving away from building in which victim was present at time of assault and declining to address whether victim was subject to "an imminent attack because she was inside the school building at the time of the stabbing").

The objective reasonableness of the defendant's use of force is further supported by Osborne's and Teasdale's testimony that they were afraid of the plaintiff

---

[15] The plaintiff contends that there was no *imminent* threat of physical harm to the defendant's guests because, according to the defendant's own testimony, his physical contact with the plaintiff was consensual until the parties were three-quarters of the way down the driveway. The defendant's testimony was contradicted, however, by the plaintiff's testimony that the assault and battery began inside the Sharon house and that the defendant pulled her out of the Sharon house without her consent. It is well established that the "defendant's own testimony need not support [his] theory of defense," and the defendant may "rely on evidence adduced either by himself *or by the* [*plaintiff*] to meet [his] evidentiary" burden. (Emphasis in original; internal quotation marks omitted.) *State* v. *Bryan*, supra, 307 Conn. 834. In light of the evidence indicating that the defendant's use of force began inside the Sharon house, in the same room as one of the defendant's guests, we reject the plaintiff's claim that there was insufficient evidence to support the imminence requirement.

Burke *v.* Mesniaeff

and felt physically threatened by her out of control behavior. Teasdale explained that she felt like her "life was in danger" because she "didn't know if [the plaintiff] had a gun," and she "was really worried about our safety, my safety, everyone's safety." In light of the risk of violence and volatility surrounding domestic disputes generally, we agree with the Appellate Court that "the jury's verdict is supported by the evidence and by its commonsense evaluation of what happened during the incident." *Burke* v. *Mesniaeff*, supra, 177 Conn. App. 846. We therefore conclude that the evidence was sufficient to support the jury's verdict in favor of the defendant.

The judgment of the Appellate Court is affirmed.

In this opinion ROBINSON, C. J., and PALMER, MULLINS AND VERTEFEUILLE, Js., concurred.

D'AURIA, J., with whom KAHN, J., joins, concurring. I concur in the result. I write separately to emphasize two points: one legal and one factual. Both points concern how our law requires that we review a trial court record in a civil case tried to a jury.

First, I agree with the majority that the concept of the plaintiff, Elizabeth Burke, as a trespasser had no place in the trial court's jury charge whatsoever. Clearly, the court improperly included it in its charge on the defendant's special defense of justification, which was limited to the defense of premises. The plaintiff argues that this erroneous charge—permitting the jury to consider the plaintiff a trespasser—tainted the jury's consideration of the defendant's special defense of defense of others. It's possible.

However, our law imposes on a plaintiff seeking to overturn a judgment after an adverse jury verdict the substantial burden of demonstrating that an erroneous charge on one count or defense tainted the jury's consid-

eration of the remaining counts or defenses. "When two or more separate and distinct defenses . . . are present in a case, an error in the charge as to one *normally* cannot upset" the jury's verdict if it was "properly charged as to the remaining defenses." (Emphasis added.) *Dinda* v. *Sirois*, 166 Conn. 68, 75, 347 A.2d 75 (1974). Under this standard, I am compelled to conclude, as does the majority, that the plaintiff has not sustained her burden of demonstrating that a new trial is necessary on the ground that the trial court's defense of premises charge (which contained the trespasser instruction) tainted the jury's consideration of the defense of others charge (which did not).

This standard for determining whether a new trial is necessary at all appears to me somewhat similar to the standard that applies when determining whether to limit the issues to be retried if a new trial is ordered due to instructional error concerning a single issue in the case. But it's not entirely clear to me.

We have said that when an instructional error has occurred as to one issue, requiring a new trial, we will order a new trial as to other issues as well "where the retrial of the single issue may affect the other issues to the prejudice of either party . . . ." (Internal quotation marks omitted.) *Wendland* v. *Ridgefield Construction Services, Inc.*, 190 Conn. 791, 796, 462 A.2d 1043 (1983). In particular, in civil cases in which the reviewing court has determined that an instructional error occurred regarding liability, a new trial as to both liability and damages has been ordered when "liability is inextricably intertwined with the issue of damages." *SKW Real Estate Ltd. Partnership* v. *Gallicchio*, 49 Conn. App. 563, 581 n.15, 716 A.2d 903, cert. denied, 247 Conn. 926, 719 A.2d 1169 (1998); accord *Scanlon* v. *Connecticut Light & Power Co.*, 258 Conn. 436, 451, 782 A.2d 87 (2001); *Murray* v. *Krenz*, 94 Conn. 503, 508, 109 A. 859 (1920); see also *Kelly Energy Systems, Inc.* v. *Commercial Industries Corp.*, 13 Conn. App. 236,

Burke *v.* Mesniaeff

237, 535 A.2d 834 (1988) (in case in which trial court employed erroneous measure of damages, "since . . . the issue of liability is so inextricably intertwined with the issue of damages, a new trial on both is required in the interest of justice"). It is not clear to me if these articulations are the same as the rule described in *Dinda.* But that is essentially the plaintiff's argument in the present case: that the defense of premises and defense of others are inextricably intertwined defenses, and error as to one instruction tainted the jury's consideration of the other, to the plaintiff's prejudice.

Regardless of whether these are different ways of saying the same thing, I accept that the party seeking a new trial on all issues bears the burden of meeting the established standard; see *Scanlon* v. *Connecticut Light & Power Co.*, supra, 258 Conn. 452 (holding that defendant failed to satisfy its burden of establishing that issues were interwoven); and the plaintiff has not asked us to modify or overrule case law governing when an erroneous charge on one defense can be deemed to taint another appropriate charge on a separate defense. Nor does she explain why the rule that "normally" applies under *Dinda*, should not apply in this case. Thus, I concur in the legal reasoning of the majority.

Second, as the majority indicates, because the parties' accounts of the incident in question differed dramatically, and because we must review the sufficiency of the evidence "in the light most favorable to sustaining the verdict"; (internal quotation marks omitted) *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 442, 815 A.2d 119 (2003); we cannot assume that the jury found the facts to be as the plaintiff has described them. Specifically, even though the jury found that the defendant committed an intentional assault and battery upon the plaintiff, substantially causing or aggravating her injuries and damages, we cannot assume that the jury credited the plaintiff's testimony that the defendant "threw [her] to the ground forcefully multiple times, jerking her up by her right arm each time that she struck the ground."

Burke *v.* Mesniaeff

Rather, because the jury returned a verdict for the defendant, our law requires that we presume that the jury found the facts to be closer to how the defendant described them: that he only grabbed the plaintiff by the arm and forcibly escorted her out of the house and down the driveway, preventing her from returning to the house. This is true notwithstanding that the jury's verdict for the defendant was in part based on a special defense (defense of premises) as to which the court's instruction was improper. The jury also found that under the defense of others doctrine—which was properly charged—the force that the defendant used upon the plaintiff was justified.

If our required review of the factual record and the jury's verdict led us to conclude that the jury had found that the defendant's assault constituted more than just grabbing the plaintiff's arm and leading her away from the house, or perhaps if this assault had occurred farther from the house than some of the testimony indicated, I would have a much harder time concluding that there was no taint from the improper trespass charge. That is to say, if the defendant had in fact thrown the plaintiff to the ground while they were down the driveway and close to the street, as opposed to having led her away by the arm while she was in the house and near the defendant's guests, I would not believe that the jury reasonably could have found that the defendant was justified in using this level of violence so far from any potential victims. Under those circumstances, I would conclude that the instruction concerning the plaintiff as a trespasser could very well have tainted the jury's consideration of the defense of others special defense. I do not believe that the possibility of the plaintiff's breaking away from the defendant, running back up the driveway in the snow and accosting members of the Questers, a historical preservation organization, while they stood at a window watching—neither fleeing, hiding nor calling the police—was sufficiently

plausible to have justified the defendant's "[need] to use . . . physical force . . . in order to repel the victim's alleged attack." (Internal quotation marks omitted.) *State* v. *O'Bryan*, 318 Conn. 621, 632, 123 A.3d 398 (2015). Because we are not required to presume that the jury credited the entirety of the plaintiff's testimony to sustain the verdict; e.g., *State* v. *Sinclair*, 332 Conn. 204, 241, 210 A.3d 509 (2019) (jury is free to credit all, some or none of witness' testimony); and because the plaintiff does not claim that there was insufficient evidence to establish the reasonableness of the level of force used by the defendant, I concur in the result the majority reaches.

————————————